IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 2 9 2012

CLERK, U.S. DISTRICT COURT
By _____
            Deputy

| | | |
|---|---|---|
| ARTHUR MASSEY AND TERRY MASSEY | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:12-CV-154-A |
| | § | |
| JPMORGAN CHASE BANK, N.A., and EMC MORTGAGE CORPORATION, | § | |
| | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court for decision is the motion of defendants,

JPMorgan Chase Bank, N.A.("Chase"), and EMC Mortgage Corporation

("EMC") (collectively, "defendants"), to dismiss the second

amended complaint ("amended complaint") of plaintiffs, Arthur

Massey and Terry Massey ("plaintiffs"), for failure to state a

claim upon which relief may be granted.  After having considered

such motion, plaintiffs' response, defendants' reply, and

applicable legal authorities, the court has concluded that

defendants' motion to dismiss should be granted.

I.

Background

Plaintiffs instituted this action by a pleading in the

1

District Court of Tarrant County, Texas, 43rd Judicial District, on August 25, 2010, against defendants as Cause Number CV10-1526. Defendants removed the case to this court on March 14, 2012. On April 17, 2012, the court ordered plaintiffs to file an amended complaint that complies with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Northern District of Texas. On May 8, 2012, plaintiffs filed their amended complaint, after which defendants filed a motion to dismiss along with a supporting brief on May 22, 2012. Plaintiffs filed their response on June 12, 2012, and defendants filed their reply on June 26, 2012.

Plaintiffs have alleged claims against defendants for violations of the Texas Finance Code, common-law fraud, statutory fraud, fraud by misrepresentation, negligent misrepresentation, and unreasonable debt collection practices under Texas common law. It appeared from the amended complaint that plaintiffs had asserted a claim for violations under the Texas Deceptive Trade Practices Act ("DTPA"); however, plaintiffs state in their response to defendants' motion to dismiss that their amended complaint "doesn't contain a DTPA claim." Resp. at 13. Therefore, the DTPA claim, if any, is dismissed. In their prayer for relief, plaintiffs seek unspecified actual damages, exemplary damages, attorney's fees and costs, and injunctive relief

allowing plaintiffs to maintain possession of their property and avoid foreclosure.

Plaintiffs made the following factual allegations in their amended complaint:

On December 17, 2004, plaintiffs purchased their home, with financing of the home secured by Sebring Capitol Partners, LP, and serviced by defendants. Am. Compl. at 4, ¶ 13. Plaintiffs made their payments in accordance with the mortgage terms until plaintiff Arthur Massey's income "suffered a drastic reduction due to the economic downturn," when plaintiffs apparently defaulted on their payments. Id. Plaintiffs contacted defendant EMC to attempt to modify their loan, applied for a modification on their first mortgage loan in February 2008, and were approved for a modification in May 2008, which reduced their payment to $1786 per month. Id. at 4-5, ¶ 15. Then, in March 2009, plaintiff Terry Massey contacted defendants to once again lower the monthly payments. Id. at 5, ¶ 16. Plaintiffs were apparently placed on a trial modification plan for three months, but then were denied a modification in August 2009 because "they weren't 60 days past due." Id.

At some point, plaintiffs were told that the plan had expired, but were then sent a "HAMP Modification/TPP packet," requesting information from them and stating that plaintiffs

3

might be eligible for a modification program, and that if they fulfilled all terms of the trial period and met all other qualifications, they could have their loan modified. Id. at 5, ¶ 17. The packet further stated that defendant EMC was "not able to calculate precisely the Past Due Arrearage Amount of the modified loan payment that will be due after successful completion of the trial period." Id. Plaintiffs timely made the payments under the trial period plan, but at the end of the three months, defendants informed them that they were not eligible because their hardship was not considered permanent. Id. at 5-6, ¶¶ 19-20. Plaintiffs then continued attemping to work out a loan modification, and "continued receiving contradictory letters advising them of possible eligibility under HAMP, while simultaneously receiving letters that they were in default, and stating an amount needed to cure." Id. at 6, ¶ 21.

Plaintiffs continued to deal with defendants in the attempt to modify their loans and remain in their home. Id. at 6-8, ¶¶ 21-36. Between December 2009 and July 2010, defendants asked plaintiffs for various financial documents, including profit and loss statements, and payments. Id. at 6-8, ¶¶ 22-35. Defendants told plaintiffs via telephone that "the modification should be complete in the next thirty days and then Plaintiffs would be back on track with their loan." Id. at 7, ¶ 26. However, it

4

appears that because plaintiffs sent different documents in at different times, some documents had to be re-sent, and the modification process was progressing slowly.  By June 30, 2010, plaintiffs' first mortgage was approximately $11,000 delinquent. Id. at 7-8, ¶ 32.

Plaintiffs received conflicting information from defendants on whether to make certain payments or how much would be accepted in a payment.  Id. at 6-7, ¶¶ 26-28.  Plaintiffs were told by two representatives not to make any payments if they were not for the full amount due, while another representative told them that they "should have never been told not to make a payment."  Id. Plaintiffs "continued receiving contradictory letters advising them of their possible eligibility under HAMP, while simultaneously receiving letters that they were in default, and stating an amount needed to cure."  Id. at 6, ¶ 21.  The letters appear to have contained inconsistent amounts needed to cure the default, and varying amounts that the modified payments would be; however, the letters noted that amounts were subject to change based on the timeliness of payments and any late charges or interest.  Id. at Exs. C-E.

On July 27, 2010, defendants "sent Plaintiffs another proposed modification . . . for a total monthly payment of $1,455.54 with a large balloon on the end."  Id. at 8, ¶ 36.

That payment amount was "a significant deviation of the 31% of
gross income requirement under mandatory HAMP guidelines."  Id.
Plaintiffs then rejected the modification proposal, "[k]nowing
that they couldn't accept a modification that they are doomed to
fail."  Id. at 8, ¶ 37.  Plaintiffs are not currently making
payments on their loans, and "remain in a state of uncertainty
and fear over the threatened foreclosure of their home."  Id. at
8, ¶ 38.  Plaintiffs are currently occupying the subject
property, and the foreclosure process appears to have been
temporarily suspended pending the outcome of this action.  Mot.
at 5.

## II.

### Grounds for Defendant's Motion

Defendants filed their motion pursuant to Rule 12(b)(6) of
the Federal Rules of Civil Procedure for failure to state a claim
upon which relief may be granted.  Defendants first argue that
"[a]ll of Plaintiffs' claims rest on the assertion that
Defendants offered Plaintiffs a modification agreement which
failed to comply with HAMP guidelines," and therefore plaintiffs
have no valid claim against them.  Alternatively, defendants
assert that plaintiffs failed to comply with federal pleading
standards for each of their claims, and therefore failed to state
a claim upon which relief may be granted.

6

III.

Analysis

A. Standard of Review

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. See Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.")

Moreover, to survive a motion to dismiss for failure to

7

state a claim, the facts pleaded must allow the court to infer
that the plaintiff's right to relief is plausible.  Iqbal, 556
U.S. at 679.  To allege a plausible right to relief, the facts
pleaded must suggest liability; allegations that are merely
consistent with unlawful conduct are insufficient.  Twombly, 550
U.S. at 566-69.  "Determining whether a complaint states a
plausible claim for relief . . . [is] a context-specific task
that requires the reviewing court to draw on its judicial
experience and common sense."  Iqbal, 556 U.S. at 679.

B. Applying the Standards to the Amended Complaint

Proceeding only on the basis of the information before the
court in plaintiffs' amended complaint, the court finds that
plaintiffs' allegations for all claims fall short of the pleading
standards.  With respect to the Finance Code claims, the
negligent misrepresentation claim, and the unreasonable
collection practices claim, the amended complaint fails to meet
the standard set forth in Rule 8(a)(2), as interpreted by the
Supreme Court in Twombly and Iqbal.  With respect to plaintiffs'
common law fraud, statutory fraud, and fraud by misrepresentation
claims, the court finds that the amended complaint does not meet
the heightened standard for fraud allegations required by Rule
9(b), as explained in the analysis of the fraud claims.

The court considers plaintiffs' theories of recovery and

defendants' arguments to dismiss in the following order: first,
defendants' argument that plaintiffs' claims are all based on
defendants' alleged failure to comply with HAMP; second, the
various claims for violations of the Finance Code; third, the
claims for common law fraud, statutory fraud, and fraud by
misrepresentation; next, the claim for negligent
misrepresentation; and finally, the claim for unreasonable
collection efforts.

### 1. Claims Alleging HAMP Violations

Defendants argue that plaintiffs have attempted to "recast"
their claims under the Making Home Affordable ("MHA") and Home
Affordable Modification Program ("HAMP"), for which there is no
private right of action, as claims under the Finance Code, as
plaintiffs base some of their allegations under the Finance Code
on defendants' failure to offer the plaintiffs a loan
modification that complied fully with MHA and HAMP.  Mot. at 5-6.
Inasmuch as plaintiffs base their cause of action on violations
of MHA and HAMP, the defendants are correct, as there is ample
legal authority holding that no private right of action exists
under MHA or HAMP, and also that plaintiffs may not assert claims
as a third-party beneficiary of defendants' contracts to
participate in MHA or HAMP.  See King v. HSBC Bank USA, N.A., No.
SA-12-CV-592-R, 2012 WL 3204190, at *3 (W.D. Tex. Aug. 3, 2012)

9

(providing an extensive list of cases in which courts determined that no private right of action or third-party beneficiary status existed under MHA or HAMP for borrowers). Further, "Lenders are not required to make loan modifications for borrowers that qualify under HAMP." <u>Hoffman v. Bank of Am., N.A.</u>, No. C 10-2171 SI, 2010 WL 2635773 (N.D. Cal. June 30, 2010).

Plaintiffs counter that they are not asserting a private right of action under MHA or HAMP, but that defendants' actions "thwart the purpose of HAMP, and are unfair and deceptive under state laws." Resp. at 8. Plaintiffs cite legal authorities that interpret the laws of other states, but cite no cases interpreting Texas law. As stated above, plaintiffs cannot attempt to enforce defendants' contracts to participate in the MHA or HAMP programs, cannot assert HAMP violations as the basis of their claims, and defendants are not required to offer plaintiffs a modification that meets the MHA or HAMP guidelines. However, the court must consider whether the conduct and facts alleged in the pleadings could state a claim for relief under Texas law. Thus, each of plaintiffs' claims will be addressed in turn.

### 2. <u>Texas Finance Code Claims</u>

Plaintiff asserts violations of the Texas Finance Code, sections 392.301(a)(8), 392.303, 392.304(a)(8), and

392.304(a)(19), and plaintiff claims a right to damages and attorney's fees under section 392.403. The court finds that plaintiffs have failed to state a claim for violations under the Texas Finance Code. The court will address each claim in turn.

a. Section 392.301(a)(8)

Under section 392.301(a)(8), a debt collector is prohibited from using "threats, coercion, or attempts to coerce" that involve "threatening to take an action prohibited by law." But, under section 392.301(b), a debt collector is not prevented from "threatening to institute civil lawsuits or other judicial proceedings to collect a consumer debt" or from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Plaintiff provides no factual allegations that defendants have threatened to take any action prohibited by law, as plaintiffs have admittedly defaulted on their loan obligations, and "foreclosure is not an action prohibited by law." Watson v. CitiMortgage, Inc., No. 4:10-CV-707, 2012 WL 381205, at *8 (E.D. Tex. Feb. 3, 2012).

b. Section 392.303

Plaintiffs fail to specify which subsection of section 392.303 forms the basis for their claim, but the court will assume that plaintiffs are bringing a claim under section

11

392.303(a)(2), as the relevant portions of their amended complaint are nearly identical to the wording of this subsection. Under section 392.303(a)(2), a debt collector "may not use unfair or unconscionable means" that involve "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."  The plaintiffs' amended complaint reads, "Defendants repeatedly utilized unfair or unconscionable means by collecting or attempting to collect interest or a charged fee or expense incidental to the allegation that was not authorized by the terms of the parties' contract, in violation of TDCPA '392.303."  Am. Compl. at 9, ¶ 41 (errors in original).  While plaintiffs' factual allegations describe some difficulties, contradictions, and apparent frustrations in securing a modification for their loan, plaintiffs allege no facts indicating that defendants attempted to impose additional or unauthorized fees.  In fact, plaintiffs' allegations and exhibits that refer to dollar amounts appear to show monthly payments under a modification plan or amounts in default, not unauthorized interest, expenses or fees. Am. Compl. at 4-8, ¶¶ 15, 18, 24, 26, 28, 32, 36.  Additionally, plaintiffs fail to allege any facts to support the allegation

12

that any payments defendants asked them to make are unauthorized by the terms of their mortgage obligation.

           c. <u>Sections 392.304(a)(8) and 392.304(a)(19)</u>

Under section 392.304(a)(8), a debt collector "may not use a fraudulent, deceptive, or misleading representation that . . . misrepresent[s] the character, extent, or amount of a consumer debt . . . in a judicial or governmental proceeding." Section 392.304(a)(19) prohibits a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer," and has been referred to as the "catch-all" provision of section 392.304. <u>Wiley v. U.S. Bank, N.A.</u>, No. 3:11-CV-1241-B, 2012 WL 1945614, at *11 (N.D. Tex. May 30, 2012). For a statement to be considered a misrepresentation under the Finance Code, the defendant must have made a false or misleading assertion. <u>Obuekwe v. Bank of Am., N.A.</u>, No. 4:11-CV-762-Y, 2012 WL 1388017, at *7 (N.D. Tex. Apr. 19, 2012) (quoting <u>Narvaez v. Wilshire Credit Corp.</u>, 757 F. Supp. 2d 621, 632 (N.D. Tex. 2010)). "For a statement to constitute a misrepresentation under the [Texas Finance Code], the debt collector must have made an affirmative statement that was false or misleading." <u>Nolasco v. CitiMortgage, Inc.</u>, No. H-12-1875, 2012 WL 3648414, at *6 (S.D. Tex. Aug. 23, 2012) (quoting <u>Burr v. JPMorgan Chase Bank, N.A.</u>, No. 4:11-CV-3519, 2012 WL 1059043, at

*7 (S.D. Tex. Mar. 28, 2012).

Plaintiffs cite Waterfield Mortg. Co., Inc. v. Rodriguez, 929 S.W.2d 641 (Tex. App.--San Antonio, 1996, no pet.), as support for their claims under section 392.304(a)(8); however, defendants correctly point out that Waterfield materially differs from this action in that there was an actual foreclosure, and the plaintiff in Waterfield had brought his loan current except for a $69.16 deficiency due to a late charge. Defs.' Reply at 3; Waterfield, 929 S.W.2d at 645 (finding that "the haste in pushing through the foreclosure" and "selling the family home while the owner is offering the money that would essentially bring him current" was adequate to support a claim for violations of the Texas Finance Code). Plaintiffs in this action have alleged no facts that they may be entitled to relief under the theory in Waterman: they have not been foreclosed upon, they are not offering money to bring their loan current, and, as of June 30, 2010, more than two years ago, their mortgage was approximately $11,000 delinquent. Am. Compl. at 7-8, ¶ 32.

Plaintiffs do not state a claim under section 392.304(a)(8) or section 392.304(a)(19). According to the face of section 392.304(a)(8), plaintiffs would have to assert that defendants "misrepresent[ed] the character, extent, or amount of a consumer debt in a judicial or governmental proceeding." Tex. Fin. Code §

392.304(a)(8) (emphasis added).  Whatever statements defendants
are alleged to have made, plaintiffs make no allegations that
they occurred in the context of a judicial or governmental
proceeding.  There are similar cases involving mortgage
foreclosures and loan modification programs in which section
392.304(a)(8) has been found to apply; however, in many of those
cases, the plaintiffs had actually been foreclosed upon or were
otherwise involved in some type of judicial or governmental
proceeding, whereas plaintiffs in this action have not reached
that point.  E.g. Swannie v. Bank of N.Y., Mellon, No. 4:11-CV-
338-Y, 2012 WL 2942242 (N.D. Tex. July 19, 2012); Willeford v.
Wells Fargo Bank, N.A., No. 3:12-CV-448-B, 2012 WL 2864499 (N.D.
Tex. July 12, 2012); Obuekwe v. Bank of America, N.A., No. 4:11-
CV-762-Y, 2012 WL 1388017 (N.D. Tex. Apr. 19, 2012).  Even
considering the substance of defendants' statements, while the
pleadings may indicate potential incompetence or less-than-
efficient business practices, no facts are alleged that can rise
to the level of an affirmative misrepresentation by the
defendants under section 392.304(a)(8).

Likewise, plaintiffs fail to state a claim under section
392.304(a)(19).  They may maintain a cause of action under
section 392.304(a)(19) only if they can sufficiently allege that
defendants used "false representation or deceptive means to

15

collect a debt or obtain information concerning" plaintiffs by
making affirmative false statements intended to deceive
plaintiffs. As noted above, the conduct of defendants may not
have reflected a high level of competence, but nothing is alleged
that can rise to the level of an affirmative false representation
sufficient to state a claim for violations of section
392.304(a)(19).

Therefore, plaintiffs have failed to state a claim for
violations of the Texas Finance Code, and defendants motion to
dismiss such claims should be granted.

2. Fraud Claims

Plaintiffs' fraud claims are governed by the heightened
pleading standard under Rule 9(b) of the Federal Rules of Civil
Procedure. See Lone Star Fund V (U.S.), LP v. Barclays Bank PLC,
594 F.3d 383, 387 n.3 (5th Cir. 2010) (explaining that when
claims "sound in fraud and negligent misrepresentation,
[plaintiffs] must plead the misrepresentations with
particularity"). Rule 9(b) of the Federal Rules of Civil
Procedure requires "a plaintiff pleading fraud to specify the
statements contended to be fraudulent, identify the speaker,
state when and where the statements were made, and explain why
the statements were fraudulent." Herrmann Holdings Ltd. v.
Lucent Techs. Inc., 302 F.3d 552, 564-65 (5th Cir. 2002)

(internal quotation marks and citations omitted).  To satisfy this requirement, plaintiffs must allege "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby."  Tuchman v. DCS Commc'ns Corp., 14 F.3d 1061, 1068 (5th Cir. 1994) (internal quotation marks omitted).

### a. Common-Law Fraud

To state a claim for common-law fraud, plaintiffs must allege that (1) the defendant made a false material representation; (2) knowingly or recklessly; (3) that was intended to induce plaintiffs to act upon the representation; and (4) plaintiffs actually and justifiably relied upon the representation and suffered injury.  Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001).

The allegations of fraud fail to satisfy Rule 9(b)'s heightened pleading requirements, and fail to allege sufficient facts to state a plausible claim for common-law fraud under Texas law.  While plaintiffs do provide some facts surrounding telephone calls with defendants' representatives, and involving allegedly contradictory or misleading communications in different letters, plaintiffs fail to allege all of the requisite elements for fraud: the content of the false representation, the identity

of the speaker, the benefit obtained by that speaker, the date

the representation was made, and specifically why each

communication was false and fraudulent.  For example, plaintiffs

allege:

> Specifically, in the November 6, 2009 letter to Plaintiffs,
> Defendant EMC denied Plaintiffs a modification under the
> guise that Plaintiffs' financial hardship was not permanent
> in nature, which was a direct contradiction of Defendant's
> prior communications to Plaintiffs and a misrepresentation
> of MHA guidelines.

Am. Compl. at 11, ¶ 54.  This allegation--the most specific claim

plaintiffs make for fraud--does allege that the letter came from

defendant EMC, and does provide the date.  However, this claim

does not attempt to state the benefit defendant obtained or why

such a letter was false or fraudulent, other than that it was

contradictory to previous information plaintiffs had received.

Plaintiffs' earlier factual allegations suffer from the same

deficiencies, as they frequently refer to telephone conversations

and allegedly contradictory correspondence with defendants, but

do not support their allegations with enough particularity to

sufficiently state a claim for common-law fraud under the

pleading standards of Rule 9(b).  Further, plaintiffs' remaining

allegations surrounding their common-law fraud claims are mere

repetitions of the elements and conclusory statements that are

insufficient to state a claim.  Therefore, plaintiffs' common-law

fraud claim must be dismissed.

### b. Statutory Fraud

Likewise, plaintiffs fail to state a claim for statutory fraud under Section 27.01 of the Texas Business and Commerce Code, which provides:

> (a) Fraud in the transaction involving real estate . . . consists of a
> > (1) false representation of a past or existing material fact, when the false representation is
> > (A) made to a person for the purpose of inducing that person to enter into a contract; and
> > (B) relied on by that person in entering into that contract; or
> > (2) false promise to do an act, when the false promise is
> > (A) material;
> > (B) made with the intention of not fulfilling it; (C) made to a person for the purpose of inducing that person to enter into a contract; and
> > (D) relied on by that person entering into the contract.

Tex. Bus. & Com. Code § 27.01(a). However, Texas courts have determined that this statute applies only to real estate or stock transactions, not loan transactions or modifications. See Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 343 (5th Cir. 2008) ("A loan transaction, even if secured by land, is not considered to come under the statute.") (quoting Burleson State Bank v. Plunkett, 27 S.W.3d 605, 611 (Tex. App.--Waco, 2000, pet. denied)).

Because plaintiffs are claiming statutory fraud under

section 27.01(a) in connection with negotiations for a loan modification, and not an actual transaction for land, their claims must fail as a matter of law.  Even if there were some way to relate section 27.01(a) with plaintiffs' cause of action, plaintiffs still have alleged no particular facts to state a claim for statutory fraud, and this claim must be dismissed.

### c. Fraud by Misrepresentation

Under Texas law, the elements of a claim for fraud by misrepresentation are "(1) a misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P., 620 F.3d 465, 468 (5th Cir. 2010).  This claim is subject to the same heightened pleading requirements as plaintiffs' common-law and statutory fraud claims, and must fail for the same reasons.

### C. Negligent Misrepresentation

In Texas, a claim for negligent misrepresentation has four elements:

> (1) the representation is made by a defendant in his course of business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information,; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the

20

representation.

Fed. Land Bank Ass'n v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991).

The type of misrepresentation contemplated is a statement of

existing fact, not a promise of future conduct.  BCY Water Supply

Corp. v. Residential Invs., Inc., 170 S.W.3d 596, 603 (Tex.

App.--Tyler 2005, pet. denied) ("A promise to do or refrain from

doing an act in the future is not actionable because it does not

concern an existing fact.").  Many of plaintiffs' allegations

concerning misrepresentations refer to defendants' promises of

possible loan modifications, and therefore cannot form the basis

for a claim of negligent misrepresentation.  Further, plaintiffs

fail to identify exactly which of defendants' statements

constituted "false information" or specific misrepresentations.

Finally, plaintiffs do not allege how they justifiably relied on

misrepresentations resulting in pecuniary loss.

In their response to defendants' motion, plaintiffs do not

offer any additional facts or allegations to support a claim for

negligent misrepresentation, but simply quote their amended

complaint, alleging:

> Over the span of several months, Plaintiffs repeatedly
> contacted Defendants regarding the status of their loan
> modification, only to be supplied false information
> regarding the status of Plaintiffs' modification, the
> documents received and the criteria for HAMP eligibility for
> the guidance of Plaintiffs in Defendants' business

> Moreover Defendants failed to exercise reasonable care or
> competence by continually misrepresenting Defendants'
> compliance under MHA guidelines while offering Plaintiffs a
> noncompliant modification.  Such actions caused Plaintiffs
> to suffer pecuniary loss by justifiably relying on
> Defendants' representations.

Am. Compl. at 12, ¶¶ 60-61 (errors in original).  Plaintiffs

still do not identify which statements were misrepresentations,

what exactly the "false information" was, or how their reliance

resulted in pecuniary losses.  Their claim for negligent

misrepresentation offers little more than legal conclusions, and

lacks sufficient factual allegations to state a claim.

    D. <u>Unreasonable Debt Collection Practices</u>

Under Texas law, "unreasonable collection practices is an

intentional tort." <u>Narvaez v. Wilshire Credit Corp.</u>, 757 F.

Supp. 2d 621, 635 (N.D. Tex. 2010) (quoting <u>EMC Mortg. Corp. v.

Jones</u>, 252 S.W.3d 857, 868 (Tex. App.--Dallas, 2008, no pet.)).

While "the elements are not clearly defined and the conduct

deemed to constitute an unreasonable collection effort varies

from case to case," a plaintiff generally must prove that "a

defendant's debt collection efforts amount to a course of

harassment that was willful, wanton, malicious, and intended to

inflict mental anguish and bodily harm." <u>Swannie v. Bank of

N.Y.</u>, No. 4:11-CV-338-Y, 2012 WL 2942242, at *4 (N.D. Tex. July

19, 2012).

Plaintiffs allege:

Defendants' actions in failing to properly apply and account for plaintiffs' payments, manipulating Plaintiffs' loan to reflect a larger amount due, refusing to accept properly tendered payments, providing inconsistent accounting information regarding the amount of the alleged indebtedness, charging unjustified fees and placing payments into suspense accounts without cause or justification constitute unreasonable debt collection practices.

Am. Compl. at 12, ¶ 63. However, plaintiffs do not allege sufficient facts to support these allegations. Plaintiffs describe defendants' representatives advising them not to make less-than-full payments, defendants' various offers of loan modifications, and the communications between plaintiffs and defendants in the course of plaintiffs' attempts to seek a loan modification; however, none of plaintiffs' allegations can rise to the level of "a course of harassment that is willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." Therefore, plaintiffs do not state a claim for unreasonable debt collection practices, and this claim must be dismissed.

IV.

## Conclusion

The court has already afforded plaintiffs an opportunity to file an amended complaint that complies with the requirements of Rules 8(a)(2) and 9(b), alleging with particularity the facts

that they contend will establish their right to recover against defendants as to each theory of recovery alleged.  For the reasons stated above, the court concludes that plaintiffs' amended complaint has not resolved those defects, and that plaintiffs' pleadings do not allege that they are entitled to relief.  Accordingly, defendants' motion to dismiss should be granted, and plaintiffs' claims for violations of the Texas Finance Code, common-law fraud, statutory fraud, fraud by misrepresentation, unreasonable debt collection practices under Texas common law, and violations of the DTPA should be dismissed with prejudice.

Therefore,

The court ORDERS that defendants' motion to dismiss be, and is hereby, granted, and that all claims and causes of action asserted in the above-captioned action by plaintiffs against defendants, be, and are hereby, dismissed.

SIGNED August 29, 2012.

JOHN McBRYDE
United States District Judge